UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSEPH GARVEY,                                          :   **Case No.: CV11-5588 (RRM) (RER)**
                                                        :
                          Plaintiff,                    :   **PLAINTIFF'S UNOPPOSED**
                                                        :   **NOTICE OF MOTION**
v.                                                      :   **AND MOTION FOR PRELIMINARY**
                                                        :   **APPROVAL OF CLASS ACTION**
METACAFE, INC.                                          :   **SETTLEMENT**
                                                        :
                          Defendant.                    :
                                                        :
---------------------------------------------------- :
                                                        X

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that Plaintiff will move this Court, unopposed, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of a proposed settlement (the "Settlement"), including a settlement agreement (the "Settlement Agreement") in this consumer class action on _____, 2011, at _____a.m., or as soon thereafter as counsel may be heard by the above-named Court, located at 225 Cadman Plaza East, Brooklyn, New York 11201, in Courtroom 6A (South Wing), before the Honorable Roslynn R. Mauskopf, United States District Judge.

Plaintiff seeks preliminary approval of this class action Settlement, certification of the proposed class for the purposes of the Settlement, provision of notice to the Settlement class, and appointment of Plaintiff as class representative and his counsel as class counsel. Plaintiff's motion is based on this Notice of Motion, the accompanying Brief in Support of the Motion and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: November 17, 2011

Respectfully submitted,
KamberLaw, LLC

By:  David A. Stampley
     100 Wall Street, 23rd Floor
     New York, New York 10005
     Telephone:  (212) 920-3072
     Facsimile:  (212) 202-6364
     dstampley@kamberlaw.com

2

## MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

In this putative class action, Plaintiff has sought relief based on his allegations that Defendant Metacafe, Inc. ("Metacafe") bypassed class members' browser privacy controls in order to track class members' Internet activities in a way that class members would not expect or detect, and shared that information with third parties without the knowledge or consent of class members. Plaintiff alleges that Adobe Flash local shared objects ("LSOs," sometimes referred to as "Flash cookies") were used to track their web activities without their knowledge or consent, that he did not receive adequate notice or choice about the use of LSOs, and that Defendant's actions violated his privacy rights, implicating a number of state and federal statutes.

As explained more fully below, in the proposed settlement, Defendant Metacafe has stated that it does not presently, and will not in the future, employ LSOs to (i) "respawn" HTTP cookies; and/or (ii) serve as an alternative method to HTTP cookies for storing information about a user's web browsing history, unrelated to the delivery of content, without adequate disclosure; and/or (iii) otherwise counteract any computer user's decision to either prevent the use of or to delete previously created HTTP cookies.[1] Defendant has also stated that, in light of Plaintiff's allegations implicating the Video Privacy Protection Act, Metacafe will cease transmitting user information to Scorecard Research, Inc.

Further, the Settlement provides for a reimbursement mechanism for class members who show that they have incurred out-of-pocket expenses or costs that they believe are attributable to Metacafe.

---

[1] In settling the case and agreeing to the injunctive relief, Defendant does not admit to the allegations of the Complaint, and denies that it presently uses LSOs in an offending manner.

The class action complaint filed by Plaintiff alleged that Defendant Metacafe used LSOs to circumvent users' blocking or deleting Metacafe browser cookies. The Plaintiff claimed that he did not receive adequate notice or choice about the use of LSOs and that Metacafe's actions violated the Plaintiff's privacy rights. The allegations and claims of the complaint set forth statutory and common-law bases for Defendant's liability under the Computer Fraud and Abuse Act; the federal Video Privacy Protection Act; the New York General Business Law Deceptive Acts and Practices; Trespass to Chattel; and Unjust Enrichment.

Representatives of the parties met and engaged in substantial private settlement mediation discussions before Rodney A. Max of Upchurch Watson White & Max. on October 19, 2011. This effort enabled the parties to reach an agreement in principle in connection with the mediation and through extensive, ongoing negotiations between the principal lawyers for the Class (Mr. Kamber) and Metacafe (Mr. Jacobson). A true and correct copy of the stipulated Settlement Agreement the "Settlement Agreement") is attached as Exhibit B to the declaration of David A. Stampley filed herewith ("Stampley Dec.").

Under the Settlement Agreement, Metacafe represents that it will not "employ LSOs to (i) "respawn" HTTP cookies; and/or (ii) serve as an alternative method to HTTP cookies for storing information about a user's web browsing history, unrelated to the delivery of content, without adequate disclosure; and/or (iii) otherwise counteract any computer user's decision to either prevent the use of or to delete previously created HTTP cookies." (Settlement Agreement sec. 4.19.) Further, the Settlement Agreement provides for a mechanism for class members to be reimbursed for out-of-pocket expenses related to the allegations of the Complaint.

Given the challenges and uncertainties facing Plaintiff if he were to litigate this matter, the results achieved through the Settlement are well beyond those required to satisfy preliminary

approval standards. Accordingly, Plaintiff moves the Court to preliminarily approve the instant settlement; certify the settlement class; appoint Joseph Garvey as class representative; and Scott A. Kamber and David A. Stampley of KamberLaw, LLC as class counsel.

## I. NATURE OF THE LITIGATION

### A. The Complaints at Issue

The instant matter (the "Garvey Case") was engaged on August 23, 2011 with the service of a Demand Letter on Metacafe. (Stampley Decl. Exh. A.) The Complaint (Stampley Decl. Exh. D), filed on November 16, 2011, sets forth claims arising under the Computer Fraud and Abuse Act; the federal Video Privacy Protection Act; the New York General Business Law Deceptive Acts and Practices; Trespass to Chattel; and Unjust Enrichment.

There is presently one other complaint pending against Metacafe that would be affected by the settlement proposed herein. Presently pending in Arkansas state court, *Nguyen v. Metacafe, Inc.*, No. CV-*2011*-51-6 (Cir. Ct. of Washington County, Ark.) (the "Nguyen Case") was filed on or about January 6, 2011 and, on behalf of a class consisting only of Arkansas residents who visited Metacafe's websites, alleges claims arising under Arkansas statutory and common law. The parties hereto agree that the putative *Nguyen* class is a subset of those covered under the Garvey complaint. Procedurally, there is a presently pending motion to dismiss in the *Nguyen* case. Further, no discovery has been produced in the *Nguyen* case.

### B. Mediation and Settlement

Arising out of Plaintiff's Demand Letter, representatives of Plaintiff and Metacafe initiated settlement discussions in August 2011 that included, among other things, in-person private mediation on October 19, 2011, during which the participants represent they candidly

aired the strengths and weaknesses of their respective litigation positions. (Stampley Decl. at ¶ 6a.)

The October mediation resulted in a memorialized, tentative accord on an agreement in principle for the resolution of all substantive claims alleged against Defendant in the litigation; this milestone was followed by further negotiations and the Parties' thereafter reaching agreement on final settlement documentation, including the attached Settlement Agreement. (Stampley Decl. at ¶ 6.) In their communications, the parties did not discuss the amount of any incentive fee or payment to class counsel until after reaching agreement on the other terms of the Settlement. (Stampley Decl. at ¶ 6b.)

The parties now seek preliminary approval of this negotiated Settlement Agreement.

## C.     Defendant's Position

At all times, Defendant has denied and continues to deny any wrongdoing whatsoever or that it has committed or have threatened or attempted to commit, any wrongful acts or violations of law or duty, including, but not limited to, those alleged in the Complaint. (Stampley Decl. at ¶ 5.) Defendant contends it has acted properly and denies that Plaintiff and putative class are entitled to any form of damages based on the conduct alleged in the Complaint. (Stampley Decl. at ¶ 5.)

In addition, Metacafe has maintained and continues to maintain that it has meritorious defenses to all claims alleged in the Complaint and that Defendant was and is prepared to vigorously defend against all claims asserted in this litigation. (Stampley Decl. at ¶ 5.) Metacafe has stated to plaintiffs at the mediation and in subsequent discussions that they believe that they would prevail on a motion to dismiss here and in *Nguyen*.[2]

---

[2] While plaintiff disputes this contention, Metacafe relies on the authority of two courts that have

Metacafe has represented and demonstrated to Plaintiff that it does not have the financial wherewithal to withstand a judgment, to fund a settlement having a financial cost greater than that provided for in the Settlement Agreement, or to litigate this case through trial.  Metacafe has further represented and demonstrated to Plaintiff that it has filed a claim with its insurance carrier seeking coverage for the claims alleged in the Complaint and in the *Nguyen* matter, and that its insurance carrier has agreed to fund a portion of the agreed Settlement; however, Metacafe's carrier, which was represented at the mediation of this matter, stated that the carrier has and will assert substantial defenses to coverage in the event the Settlement is not approved and litigation, in this Court or in Arkansas, proceeds.

## II.     TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement are detailed below.

### A.     Definitions

1.      Section 1.1 of the Settlement Agreement defines the "Class" as: "[A]ll persons in the United States who, during the Class Period, used any web-browsing program on any device to access one or more web sites or online content controlled, operated, or sponsored by Metacafe, including www.metacafe.com."

2.      Section 1.16 of the Settlement Agreement defines the "Preliminary Approval Date" as the "date entered by the Court on a Preliminary Approval and Notice Order."

3.      Section 1.18 of the Settlement Agreement defines "Protected Persons" as: "Metacafe and each of its respective past and present officers, directors, employees, insurers, agents, representatives, investors, customers, partners, joint-venturers, parents, subsidiaries

---

considered overlapping issues and dismissed under 12(b)(6).  *See Bose v. Interclick, Inc.*, No. 10 Civ. 9183 (DAB), 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011).

(defined as any entity in which Metacafe owns or controls, directly or indirectly, at least 50% of the voting securities or the right to elect a majority of the members of the board of directors, or by contract or otherwise controls such entity, or has the right to direct the management of such entity), affiliates, attorneys, successors and assigns."

4.      Section 1.19 of the Settlement Agreement defines "Released Claims" as: "Any and all claims for payment, non-economic or injunctive relief of any kind or nature and any and all liabilities, demands, obligations, losses, actions, causes of action, damages, costs, expenses, attorneys' fees and any and all other claims of any nature whatsoever, based on any of the laws, regulations, statutes or rules cited, evidenced or referenced by such allegations and statements, or any other claims, including but not limited to: all claims, including unknown claims, as set forth in Paragraph 5.3 below, arising from or relating, during the Class Period, to (i) any of the allegations, facts or statements set out in, or to any claim that was or could have been raised in a complaint in any of the Matters; (ii) Metacafe's use of LSOs; (iii) the alleged depositing of Cookies or LSOs on the computers of Persons who accessed one or more of Metacafe's websites; (iv) the regeneration or redeposit of Cookies after a user deleted those Cookies; (v) the alleged obtaining or provision of information from or about a user visiting one or more of Metacafe's websites, contrary to either the user's consent or intent; (vi) claims that Metacafe allegedly tracked users, shared information about them or the videos they viewed with third parties without consent or displayed advertising to them without sufficient notice, or profited from the sale of personal or personally identifiable information to third parties; (viii) claims that Metacafe's actions led to the diminution of users' computer processing capacity and/or network connectivity **;** and (ix) claims that Metacafe allegedly facilitated or other enabled other parties' tracking of users, sharing of their information, or displaying of advertising to them

8

without sufficient notice; and (viii) claims associated with Metacafe's compliance with the injunctive relief provided for herein."

### B.   General Relief

The settlement website will provide a means for Class Members to submit a request for reimbursement for any out-of-pocket expenses or costs that they believe they incurred for a reason attributable to Metacafe that could not have been remedied by simply removing any HTTP cookie and/or LSOs associated with Metacafe and using readily available tools to do so, up to a maximum of Two Hundred Fifty Dollars ($250) per Class Member. Claims for asserted lost profits or lost opportunity costs will not be permitted. Defendant will also pay all attorneys' fees, costs, any enhanced awards to the named Plaintiff, settlement administration costs, and notice costs as provided for under the Settlement Agreement.

### C.   Additional Relief[3]

In addition to the payments and credits described above, Metacafe will also provide the following relief:

1.     Metacafe represents that it will not "employ LSOs to (i) "respawn" HTTP cookies; and/or (ii) serve as an alternative method to HTTP cookies for storing information about a user's web browsing history, unrelated to the delivery of content, without adequate disclosure; and/or (iii) otherwise counteract any computer user's decision to either prevent the use of or to delete previously created HTTP cookies." (Settlement Agreement sec. 4.19.)

2.     If Metacafe deposits LSOs on the computers of users "who visit one or more of its U.S. consumer-oriented websites or interact with its widgets or other applications on

---

[3] The following provisions are substantially identical to those that were approved in a settlement of similar claims in In Re Quantcast Advertising Cookie Litig. No. 2:10-cv-05484-GW, In Re Clearspring Flash Cookie Litig., No. 2:10-cv-05948-GW, and Davis, et al. v. VideoEgg, et al., No. 2:10-cv-07112-GW-JCG].

such websites, Metacafe shall include, in its online Privacy Policy, a disclosure of its use of LSOs and a link to at least one website or utility offering users the ability to manage LSOs, if such website or utility is available. By linking to such a third-party website or utility in order to comply with this Agreement, Metacafe will not assume responsibility for the functionality or any other aspect of such website or utility. If one or more of Metacafe's websites, widgets, or application components may not maintain its or their full user functionality unless the user's settings permit full acceptance of LSOs, Metacafe shall so disclose in its Privacy Policy." (Settlement Agreement sec. 4.20.)

       3.     Metacafe agrees to cease transmitting its users' numerical user IDs ("UIDs") to third parties, including ComScore, Inc. (Settlement Agreement sec. 4.21.)

       4.     Within 30 days after the Effective Date, "Metacafe shall, through a statement and link in its Privacy Policy, provide Class Members with a clear and conspicuous online method to cancel their accounts. For at least 30 days after this change is made, Metacafe will include the word "Updated" in the links to the Privacy Policy in order to indicate that the privacy policy has been updated with important information about the user's account. Any user who opts to cancel his or her account via such online method will be taken to a page on the Metacafe website that will offer the user the option to purge all user-level profile and account information upon (i) verifying the user's intention and (ii) submitting the user's valid password. " (Settlement Agreement sec. 4.23.)

       5.     Metacafe agrees to reasonably cooperate in providing confirmatory discovery to Settlement Counsel regarding Metacafe's privacy-protection practices. (Settlement Agreement sec. 4.24.)

6.      The provisions of Paragraphs 4.20-4.23 shall remain in effect until July 1, 2013 unless the Settlement Agreement is, beforehand, terminated according to its terms.

7.      Payment of Notice and Administrative Fees: The full cost of notice and administration and effectuation of the Settlement Agreement shall be paid by Defendant.

8.      Compensation of Class Representatives: In addition to any benefits afforded under the Settlement, and in recognition of their efforts on behalf of the class, subject to Court approval, representative Plaintiffs shall receive $7,500 as appropriate compensation for their time and effort serving as class representatives in the litigation against Metacafe.

9.      Payment of Attorneys' Fees and Expenses: Defendant has agreed that a payment to Class Counsel, subject to Court approval, of $400,000 is fair and reasonable, and Defendant will not object to or otherwise challenge Class Counsel's application for payment of fees from the Settlement Fund if limited to such amount. Proposed Class Counsel has, in turn, agreed not to seek more than said amount from the Court.

**D.      Release**

Upon the entry of a final order approving this settlement and following the expiration of the time for appeal or the entry of a decision on such appeal, class representatives and each and every member of the settlement class who have not timely filed a request to be excluded from the settlement class will release and forever discharge Metacafe and their subsidiaries and affiliates, for their deployment of technologies described above in any of their online content, as further explained in the attached Settlement Agreement.

**III.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

Prior to granting preliminary approval of a settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Manual for Complex*

*Litigation* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court may certify a class when the plaintiff demonstrates that the proposed class and proposed class representatives meet the following prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy or representation. Fed. R. Civ. P. 23(a)(1)-(4). After meeting the strictures of Rule 23(a), the plaintiffs must then demonstrate that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a class, courts do not inquire into the merits of plaintiffs' claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). The standards when seeking preliminary approval are not as stringent as for final approval, and a "full fairness analysis is unnecessary at this stage." *Passafiume v. NRA Group LLC*, 274 F.R.D. 424, 428 (E.D.N.Y. 2010).

### A. The Requirement of Numerosity is Satisfied

The numerosity requirement is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, however in this Circuit, numerosity has been presumed at a figure of 40. *Passafiume*, 274 F.R.D. at 429 (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). In this case, based on Metacafe's representations, the class is estimated to include several million Internet users in the United States, easily enough to satisfy numerosity requirements.

### B.     The Requirement of Commonality is Satisfied

The second threshold to certification requires that there be questions of law or fact common to the class. Fed. R. Civ.P. 23(a)(2). Commonality may be met by showing that the

"'injuries derive from a unitary course of conduct.'" *Ramos v. SimplexGrinnell LP*, 2011 WL 2471584 *3 (E.D.N.Y.) (quoting *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004)). A single issue common to the class may be sufficient to warrant class certification. *Passafiume*, 274 F.R.D. at 429.

The common issues and questions among class members in this case include, but are not limited to: (1) whether Defendant, without authorization, created and/or manipulated Adobe Flash Player local stored objects on computers to which Class Members enjoyed rights of possession superior to those of Defendant; (2) for what purposes Defendant created and/or manipulated Adobe Flash Player LSOs on Class Members' computers; (3) whether Defendant's actions violated various federal and state laws; (4) whether Defendant misappropriated valuable information assets of Class Members; and (6) whether Defendant continues to retain valuable information assets from and about Class Members.

### C.    The Requirement of Typicality is Satisfied

Rule 23 next requires that a plaintiff's claims be typical of those of the class. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "'when each class member's claim arises from the same course of events, and each class member makes a similar legal arguments to prove the defendant's liability.'" *Ramos*, 2011 WL 2471584 at *6 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). Here, Defendant's alleged practice of using LSOs to circumvent users' blocking or deleting of Metacafe browser cookies and failure to provide adequate notice or choice about the use of LSOs is alleged to have resulted in Plaintiff and the proposed settlement class having their privacy rights violated in breach of federal, state and common law. It is alleged that Plaintiff and each proposed class member were all subjected to Defendant's identical wrongful

conduct in a nearly identical manner. As such, Plaintiff's claims are typical of those of the proposed class and Fed. R. Civ. P. 23(a)(3) is met.

### D.       The Requirement of Adequate Representation is Satisfied

The final Rule 23(a) prerequisite requires that the proposed class representatives have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two elements to this requirement: (1) that the interests of the named plaintiff are not antagonistic to those of the proposed class members, and (2) that proposed class counsel is qualified, experienced, and able to handle the litigation. *Ramos*, 2011 WL 2471584 at *7; *Passafiume*, 274 F.R.D. at 429.

In this case, Plaintiff has the same interests as the proposed class members—all have allegedly been wrongfully harmed by Defendant's alleged use of tracking devices. Plaintiff therefore has no interests antagonistic to the interests of the proposed class. Further, class counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class action lawsuits that are similar in size, scope and complexity to the present case. (*See* Firm Resume of KamberLaw, LLC, a copy of which is attached hereto as Exhibit B.) Accordingly both Plaintiff and his counsel have and will adequately represent the class.

### E.       The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Once the subsection (a) prerequisites are met, Federal Rules of Civil Procedure 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Passafiume*, 274 F.R.D. at 430. In this case and in

the context of the proposed settlement, common issues of fact and law predominate. Defendant's alleged practice of using LSOs to circumvent users' blocking or deleting of Metacafe browser cookies and failure to provide adequate notice or choice about the use of LSOs is alleged to have resulted in Plaintiff and the proposed settlement class having their privacy rights violated in breach of federal, state and common laws and is common to the class members' claims and their damages and predominates over any issues applicable to any individual member of the class.

In addition, the instant class action is superior to any other method available to fairly, adequately and efficiently resolve the class members' claims. Absent a class action, most members of the class would find the cost of litigating their claims to be prohibitive, and such multiple individual actions would be judicially inefficient. Also, because the action, with the Court's permission, will now settle, the Court need not consider the issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620. Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

### E.   The Proposed Settlement Benefits the Subset of Class Members Who are Putative Class Members in the *Nguyen* Case

Inasmuch as the putative class members in the *Nguyen* Case in Arkansas state court are part of the larger class defined in the *Garvey* Case, it is appropriate that they would receive the benefits of and provide the releases defined in the Settlement Agreement.

Further, the relative progress of the two matters indicates that economy of judicial resources and efficiently and timely provision of relief to the class would be promoted by the granting of this motion. Here, the parties have reached a Settlement Agreement addressing claims raised in the *Nguyen* Case plus other claims, as well.  The Court in the *Nguyen* case has before it Metacafe's fully-briefed motion to dismiss, but has not yet ruled on Metacafe's motion to stay discovery in the case while that motion to dismiss is pending.

To ensure the promotion of the principles of judicial economy and efficient and timely provision of relief to the class, it is within this Court's authority to employ the All Writs Act, 28 U.S.C. §1651, to assert its jurisdiction and bring this dispute to resolution. *See In re Baldwin-United Corp.*, 770 F.2d 328, 338, 341 (2d Cir. 1985) (use of All Writs Act appropriate to enjoin state attorney general actions, so as to "bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction"); *Standard Microsystems Corp. v. Texas Instruments, Inc.*, 916 F.2d 58, 60 (2d Cir. 1990) (All Writs Act appropriate to invoke where state court proceedings may undermine imminent settlement of complex matter in federal court). Similarly, the Second Circuit has noted that an All Writs Act injunction of a state court proceeding may issue where (1) most defendants have already settled or if such settlement is imminent and (2) the parallel state proceeding would pose more than a mere "delay" for the federal proceeding. *Ret. Sys. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 427-28 (2d Cir. 2004); *see also In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 236 (3d Cir. 2002) (holding injunction appropriate for pending or conditionally approved settlement given likelihood that "almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court").

In the instant matter, the scope of claims, relief provided, and class members who would receive such relief far exceed that in the *Nguyen* Case which, as noted, offers no basis to anticipate imminent resolution even within the confines of its claims and class. Indeed, Metacafe lacks the financial ability to continue to defend either litigation through contested discovery. Here, the Settlement Agreement and the parties' optimism that it will indeed be finally approved augur to facilitating that result. Accordingly, Plaintiff respectfully requests that, in addition to preliminarily approving the settlement presented here, this Court enjoin such other proceedings

as would hinder final approval in this matter.  In the event that the plaintiff in the *Nguyen* case or any other class member wishes to assert an objection to the fairness of this proposed settlement — objections the Parties do not believe would be meritorious — the proper procedure would be to present those objections to this Court and allow the Parties to answer them.

## IV.     THE COURT SHOULD APPOINT SCOTT A. KAMBER AND DAVID A. STAMPLEY OF KAMBERLAW AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed class counsel have extensive experience in prosecuting class actions and other complex litigation. (Stampley Decl. at ¶ 10; *see also* Exhibit D.) Further, proposed class counsel have diligently investigated and prosecuted this matter, dedicating substantial resources to the investigation of claims at issue in the action, and have successfully negotiated the settlement of this matter to the benefit of the class. (Stampley Decl. at ¶¶ 3-4.)

It should further be noted that KamberLaw filed the first cases ever brought involving the use of advanced web technologies as an alternative to conventional cookies and has been the only law firm that has successfully prosecuted class-wide litigation in cases involving such web technologies, generally, and Adobe Local Shared Objects, specifically. The proposed class counsel in this matter have been featured speakers on the subject matter of the complaint in the United States and abroad.  Scott A. Kamber was the keynote speaker this past September for the International Association of Privacy Professionals annual meeting.

Counsel and class representative, assisted by non-legal experts, spent many months considering legal theories, as well as investigating factual and technology-related issues regarding Defendant's use of LSOs to circumvent users' blocking or deleting of Metacafe browser cookies and their related lack of adequate notice or choice about the use of LSOs. (Stampley Decl. at ¶¶ 3-4.) Accordingly, the Court should appoint Plaintiff's counsel to serve as class counsel for the proposed class pursuant to Rule 23(g).

## V.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

After certifying the settlement class, the Court should preliminarily approve the settlement. The procedure for review of a proposed class action settlement is a well-established two-step process. Fed. R. Civ. P. 23(e); *see also* Alba & Conte, 4 *Newberg on Class Actions*, § 11.25 at 38-39 (4th Ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, § 11.25, at 38-39 (quoting *Manual for Complex Litigation* § 30.41 (3d ed. 1995)). This hearing is not a fairness hearing; it "'is at most a determination that there is what might be termed "probably cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp.2d 601, 607 (W.D.N.Y. 2011) (quoting *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D.Conn. 2010)). Preliminary approval should be granted where the proposed settlement is the "result of serious, informed, non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies." *Passafiume*, 274 F.R.D. at 430. The *Manual for Complex Litigation* characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentations from the settling parties. *Manual for Complex Litig.*, § 21.632 (4th ed. 2004). If the court finds a

settlement proposal to be within the range of possible approval, it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, § 11.25, at 38-39.

Strong judicial policy favors the voluntary conciliation and settlement of complex class action litigation. *See Cronas v. Willis Group Holdings, LTD*, 2011 WL 5007976 (S.D.N.Y.) (citing *Bourlas v. Davis Law Assocs.,* 237 F.R.D. 345, 354 (E.D.N.Y. 2006). In fact, a settlement negotiated at arms' length by experienced counsel is presumptively fair and reasonable. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001). Ultimately, the Court's role is to ensure the settlement is fundamentally fair, reasonable and adequate. Fed. R. Civ. P. 23(c) (2).

In this case, there is no question that the proposed settlement is at least "within the range of possible approval." Only after extended arms-length negotiations conducted under the mediatory supervision of Mr. Rodney Max, were the parties able to reach an agreement as to relief for the class. (Stampley Decl. at ¶ 6.) Under that agreement, class members will benefit from Defendant's agreement not to employ LSOs as alleged in the Complaint and to provide proper notice about the use of browser cookies. The settlement also provides a mechanism for class members to apply for reimbursement for out-of-pocket expenses incurred as a result of the alleged conduct of Metacafe.

A comparison of the potential costs and benefits of consummating the Settlement Agreement versus continuing to prosecute this matter requires consideration of a number of factors, including the strength of plaintiff's claims and ability to prevail at trial—in which class counsel remain confident—and the relief Plaintiff anticipates from a successful trail outcome. Countervailing considerations include the legal and factual burdens Plaintiff would bear in bringing the matter to trial, the defenses Defendant would likely assert—in which Defendant has

expressed continued confidence—and the complexities and risks of class action practice. Even if successful in prosecuting this matter, Plaintiff would have forfeited the valuable, additional relief now being offered at Defendant's discretion, and which could not be compelled from Defendant following trial.

In advocating for the approval of the Settlement Agreement, class counsel are aided by their collective experience and awareness of the costs and risks described above, and are mindful of the interests of Plaintiff and the putative class, particularly given the proposed Settlement's substantial and prompt relief and meaningful long-term benefits. It is apparent that the proposed settlement serves the best interests of class members. Accordingly, this Settlement easily falls within the "range of possible approval" and merits this Court's preliminary approval.

## VI.    THE PROPOSED PLAN OF CLASS NOTICE

Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) similarly says, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class member." *Newberg on Class Actions*, § 11.53, at 167 (4th ed. 2002).

The proposed settlement includes the parties' agreement on providing notice through a number of mechanisms: publication, direct notice by electronic mail to all active users of www.metacafe.com who provided the company with a valid email address, and a dedicated website.

–    by electronic mail to all active users of www.metacafe.com who provided the company with a valid email address;

–    with a link to the Settlement Website that displays summary and longform notices, which link will be displayed on Metacafe's homepage and, if different, users' landing pages on www.metacafe.com, and on Metacafe's Privacy Policy webpage; that link will remain active until one week after the Court-ordered settlement objection or opt-out deadline;

–    with a press release distributed on PR Newswire's national circuit to 5,800 traditional media outlets and an additional 5,000 or more online sites; and

–    with online banner and text ads containing links to the Settlement Website homepage or the summary and longform notices displayed on that website, with

such ads to be placed on the 25 websites that have the highest number of unique viewers per month on the Google Adwords network and similarly continuing until one week after the . This program will continue until seven (7) days after the the Court-ordered settlement objection or opt-out deadline.

(Settlement Agreement, sec. 4.1).

VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that the Court grant preliminary

approval of the proposed Settlement Agreement and enter the proposed order separately

submitted herewith (a copy of which is Exhibit A.1 to the Settlement Agreement), and grant such

further relief the Court deems reasonable and just.

Dated: November 17, 2011                         Respectfully submitted,
                                                 KamberLaw, LLC

                                                 By:
                                                 David A. Stampley
                                                 One of the attorneys for plaintiff Joseph
                                                 Garvey and the putative class

Scott A. Kamber
skamber@kamberlaw.com
David A. Stampley
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:  (212) 920-3072
Facsimile:   (212) 202-6364

Joseph H. Malley (not admitted)
malleylaw@gmail.com
Law Office of Joseph H. Malley
1045 North Zang Boulevard
Dallas, Texas 75208
Telephone:  (214) 943-6100

Jeremy R. Wilson (not admitted)
jeremy@wilsontrosclair.com
Wilson Trosclair & Lovins, PLLC
302 North Market Street, Suite 510
Dallas, TX 75202
Telephone: (214) 484-1930
Facsimile: (214) 276-1475